# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED MY FUNDS, LLC | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 4:19-CV-373 |
| CHANDANA PERERA, HISHAM | § | Judge Mazzant |
| MUBAIDIN, MICHAEL R. | § | |
| MCCULLOUGH, CLICK MART, INC., | § | |
| YASER AL-SHAYEF, WAIT AL- | § | |
| SHAYEF | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Michael R. McCullough's Rule 12(b)(2) and 12(b)(3) Motion to Dismiss (Dkt. #20). Having considered the motion and the relevant pleadings, the Court finds that the motion should be granted.

### BACKGROUND

This case arises from a dispute regarding a lease of three convenience stores located in New Mexico ("the New Mexico Properties" or "the Properties") allegedly owned by Plaintiff United My Funds, LLC ("United My Funds") (Dkt. #1). The story goes that James Yoo, president and owner of United My Funds, formed another business called Unitex Fuel, LLC ("Unitex"), a Texas company, in February 2017. Yoo formed the company with Defendants Chandana Perera, a Kansas resident, and Hisham Mubaidin, a Florida resident (collectively "the Unitex Defendants"). Unitex was in the business of supplying fuel to gas stations and convenience stores.

The relationship between Yoo and the Unitex Defendants began to break down when the Unitex Defendants approached Defendants Yaser Al-Shayef ("Y. Al-Shayef"), and Wail Al-Shayef ("W. Al-Shayef"). Y. Al-Sahyef, a New Mexico resident, was the president of Defendant Click Mart, Inc., ("Click Mart"). W. Al-Shayef, a New Mexico resident, was intimately involved

in the business operations with Click Mart. The Unitex Defendants met with the Click Mart Defendants[1] in Dallas, Texas to discuss a possible lease, with an option to purchase, the New Mexico Properties without Plaintiff's knowledge or consent. The Unitex Defendants made representations that the New Mexico Properties were owned by Unitex, that they had the right to lease and sell the Properties, and that Yoo was merely an investor in Unitex. Either during that meeting or sometime thereafter, these discussions resulted in an agreement for Unitex to lease the New Mexico Properties to Click Mart with the option to purchase the Properties ("the Lease Agreement"). The Lease Agreement also contained provisions about personal property, namely inventory. Plaintiff asserts that "[n]either [] Perera, [] Mubaidin, nor Unitex [] has any interest in the" New Mexico Properties and that the Lease Agreement ran contrary to Plaintiff's ownership interest in the Properties. (Dkt. #8 ¶ 22).

After entering into the Lease Agreement, W. Al-Shayef issued two checks in the amount of $52,244.00 and $25.000.00 to Unitex, on behalf of Click Mart, pursuant to the Lease Agreement. It is additionally alleged that there were two additional wire transfers of $25,000.00 and $20,000.00 to Defendant and Movant Michael R. McCullough, on behalf of Click Mart, pursuant to the Lease Agreement. McCullough is alleged to be a business partner or friend of the Unitex Defendants. The wire transfers are alleged to be made by Jonesville Associates Inc. and Al Group, Inc., which are both run by "a business partner, family, or friend of W. Al-Shayef." (Dkt. #8 ¶ 25–26).

Based on these allegations, Plaintiff filed suit against the Unitex Defendants, the Click Mart Defendants, and McCullough (collectively "Defendants") in the District Court for Collin County, Texas asserting that the Defendants were "involve[d] [in] an elaborate scheme" to defraud

---

[1] The Court refers to A. Al-Shayef, W. Al-Shayef, and Click Mart collectively as the Click Mart Defendants.

Plaintiff of its rights to be the owner of real property and personal property. (Dkt. #2 at p. 1). Defendants removed the case based on diversity of citizenship to the Eastern District of Texas[2] (Dkt. #1). After the Court issued its order and advisory, Plaintiff filed an amended complaint on June 10, 2019 (Dkt. #8). In response, on July 16, 2019, McCullough filed the present motion to dismiss (Dkt. #20). On July 29, 2019, Plaintiff filed a response to the motion (Dkt. #24). McCullough filed his reply on August 5, 2019 (Dkt. #26).[3] No sur-reply was filed.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2). After a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to establish that *in personam* jurisdiction exists. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 202 (5th Cir. 1989)).

To satisfy that burden, the party seeking to invoke the court's jurisdiction must "present sufficient facts as to make out only a *prima facie* case supporting jurisdiction," if a court rules on a motion without an evidentiary hearing. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). When considering the motion to dismiss, "[a]llegations in [a] plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits." *Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 557 (N.D. Tex. 2003) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 282–83 n.13 (5th Cir. 1982)); *accord Black v. Acme Mkts., Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977). Further, "[a]ny genuine, material conflicts between the facts

---

[2] Plaintiff initially listed Defendant Chandana Perera as a resident of Frisco, Texas. However, in their notice of removal, Defendants corrected this information, identifying that Perera's residency was in Kansas thereby, creating complete diversity.

[3] In his reply, McCullough objects to certain evidence offered by Plaintiff. Because the Court finds that there is no personal jurisdiction over McCullough regardless the Court overrules the objection.

3

established by the parties' affidavits and other evidence are resolved in favor of plaintiff for the purposes of determining whether a *prima facie* case exists." *Id.* (citing *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 161, 1067 (5th Cir. 1992)). However, if a court holds an evidentiary hearing, a plaintiff "must establish jurisdiction by a preponderance of the admissible evidence." *In re Chinese Manufactured Drywall Prods. Liab. Lit.*, 742 F.3d 576, 585 (5th Cir. 2014) (citing *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241–42 (5th Cir. 2008)).

A court conducts a two-step inquiry when a defendant challenges personal jurisdiction. *Ham v. La Cinega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). First, absent a controlling federal statute regarding service of process, the court must determine whether the forum state's long-arm statute confers personal jurisdiction over the defendant. *Id.* And second, the court establishes whether the exercise of jurisdiction is consistent with due process under the United States Constitution.

The Texas long-arm statute confers jurisdiction to the limits of due process under the Constitution. *Command-Aire Corp. v. Ont. Mech. Sales and Serv. Inc.*, 963 F.2d 90, 93 (5th Cir. 1992). Therefore, the sole inquiry that remains is whether personal jurisdiction offends or comports with federal constitutional guarantees. *Bullion*, 895 F.2d at 216. The Due Process Clause permits the exercise of personal jurisdiction over a non-resident defendant when the defendant has established minimum contacts with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts with a forum state can be satisfied by contacts that give rise to either general jurisdiction or specific jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

4

General jurisdiction exists only when the defendant's contacts with the forum state are so "'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see Cent. Freight Lines v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (citing *Helicopteros Nacionales de Colum., S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). Substantial, continuous and systematic contact with a forum is a difficult standard to meet and requires extensive contacts between a defendant and the forum. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1992) (citation omitted). However, "vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Johnston*, 523 F.3d at 609 (citing *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 596 (5th Cir. 1999)).

Specific jurisdiction is proper when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state. *Helicopteros*, 466 U.S. at 414 n.8. For the court to exercise specific jurisdiction, the court must determine "(1) whether the defendant has . . . purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

Defendants who "'reach out beyond one state' and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for consequences of their actions." *Burger King Corp.*, 471 U.S. at 475 (citing *Travelers Health Assoc. v. Virginia*, 339 U.S. 643, 647 (1950)). Establishing a defendant's minimum contacts with the forum state requires contacts that are more than "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person." *Id.*

"If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (citations omitted); *Stephenson v. Caterpillar, Inc.*, No. 2:16-cv-71-JRG-RSP, 2018 WL 6038359, at *3 (E.D. Tex. Oct. 30, 2018) (citations omitted). In this inquiry, the Court examines five factors: (1) the burden on the nonresident defendant; (2) the forum state's interests; (3) the plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the efficient administration of justice; and (5) the shared interest of the several states in furthering fundamental social policies. *Burger King*, 471 U.S. at 477. "It is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown." *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

## ANALYSIS

McCullough asks the Court to dismiss the case asserted against him because the Court lacks personal jurisdiction over him and because venue is improper.[4] Because the Court finds that it lacks jurisdiction, it does not address venue.

---

[4] The Court notes and Plaintiff agrees that the events that took place in Texas occurred in Dallas, Texas located within the Northern District of Texas; however, McCullough is the only defendant that filed a motion to dismiss based on venue.

In this case, Plaintiff asserts that the Court can exercise personal jurisdiction over McCullough using specific jurisdiction and does not argue that general jurisdiction exists in this case. As previously identified, specific jurisdiction is proper when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state. *Helicopteros*, 466 U.S. at 414 n.8. Here, Plaintiff filed suit against McCullough asserting a cause of action for "money had and received" and "conspiracy for violation of Texas Theft Liability Act." (Dkt. #8 at pp. 11–13). A plaintiff bringing multiple claims that *arise* out of different forum contacts of the defendant must establish specific jurisdiction for each claim." *Seiferth*, 472 F.3d at 274. However, courts may determine whether specific jurisdiction over distinct causes of action collectively where the claims are based on the same set of contacts. *See Weatherford v. Ecker*, No. 6:12-cv-034-C, 2012 WL 12894137, at *2 (N.D. Tex. Aug. 23, 2012) (discussing distinct causes of action collectively in deciding specific jurisdiction). Here, the causes of action arise out of the same general set of facts. Thus, the Court addresses specific jurisdiction collectively in this case.

To determine whether the Court can exercise specific jurisdiction over the causes of action collectively in this case, the Court must determine "(1) whether the defendant has . . .purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Nuovo Pignone, SpA*, 310 F.3d at 378 (citing *Burger King Corp*, 471 U.S. at 474). "If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth*, 472

F.3d at 271. As such, the Court will address the first two prongs together, and then address the third.

### I. Whether Plaintiff's Causes of Action Arise Out of McCullough's Forum-Related Contacts

McCullough claims that he does not have any forum-related contacts, much less that he has any contacts that relate to the causes of action asserted against him. Plaintiff asserts that the Court has specific personal jurisdiction over McCullough. Essentially, the allegations are that the Unitex Defendants, the Click Mart Defendants, and McCullough are all in a conspiracy to deprive Plaintiff of its ownership rights in the New Mexico Properties. In the course of the conspiracy, the Unitex Defendants and the Click Mart Defendants met in Texas to discuss the Lease Agreement. The discussions ultimately led to the Lease Agreement. McCullough was aware of the discussions and received proceeds from the Lease Agreement. The Lease Agreement was fraudulent and deprived Plaintiff, a Texas entity, of the rights to its ownership interest in the New Mexico Properties. Thus, according to Plainitff, based on McCullough's participation in the conspiracy to deprive a Texas entity of its rights, awareness of the Unitex Defendants' and the Click Mart Defendants' actions in Texas, and receiving payments from the Lease Agreement, the Court can exercise personal jurisdiction over McCullough.

The Court disagrees. To start, receiving a wire transfer, even if the wire transfer came from Texas is not sufficient to establish minimum contacts without more. *See Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985). In *Patterson*, even though the defendant made telephone calls to Texas, wired payments to Texas and entered into contracts with two Texas entities, the Fifth Circuit determined there were insufficient contacts with Texas to establish personal jurisdiction. *Id.* According to the Fifth Circuit, despite these actions with Texas because material performance and negotiations occurred in Mexico "the activities of the parties to this action [were

8

not] centered on Texas," which distinguished it from another case where the forum state was "clearly the hub of the parties' activities." *Id.* (distinguishing *Miss. Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003 (5th Cir. 1982)). Similarly, here, while negotiations took place in Texas, the Lease Agreement surrounded the New Mexico Properties, all located in New Mexico. Perera, a Kansas resident, was to be the landlord for the tenant, Click Mart—a New Mexico entity owned and operated by New Mexico residents. Thus, the hub of the events in this case appears to be in New Mexico.

Regardless, Plaintiff acknowledges that the "funds received by McCullough may have been wired from accounts outside of Texas." (Dkt. #24 at p. 6). McCullough maintains that the funds were wired from New Mexico. As such, the wire transfers, not coming from or going to Texas do not equate to a contact with Texas.

Plaintiff argues that the wire transfers should be sufficient because the "progeny of the funds, the critical events in the case clearly arise from fraudulent representation[s] made and [a] sale consummated in Texas with McCullough's knowledge and assent." (Dkt. #24 at p. 6). Again, the Court disagrees with Plaintiff. Personal jurisdiction must be based on a defendant's "individual contacts" with the forum "and not as part of [a] conspiracy." *See Delta Brands Inc. v. Danieli Corp.*, 99 F. App'x 1, 5 (5th Cir. 2004) (per curiam).[5] Thus, any jurisdictional allegations of the conspiracy are relevant only if "the alleged conspiracy w[as] related to or arose out of [McCullough's] contacts with Texas." *Id.* After all, the Supreme Court has held that "[e]ach defendant's contacts with the forum State [are] assessed individually." S*ee Calder v. Jones*, 465 U.S. 783, 790 (1984) (citing *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)). Thus, any meeting in

---

[5] *See also Thomas v. Kadish*, 748 F.2d 276, 282 (5th Cir. 1984) ("[N]either the present conclusory allegations of conspiracy by the California depends based upon their acts in California, nor the alleged effects of this conspiracy in Texas, show a claim of sufficient minimum contacts with Texas that would support personal jurisdiction of Texas courts against these defendants for their acts in California.").

9

Texas between the Unitex Defendants and the Click Mart Defendants is not relevant to the jurisdictional analysis for McCullough.

Further, the fact that the conspiracy was aimed at defrauding Plaintiff, a Texas entity, does not establish personal jurisdiction over McCullough. As identified by the Supreme Court of the United States, the minimum contacts analysis is not sufficient merely because the non-resident defendant knew the plaintiff would suffer an injury in the forum state. *See Walden v. Fiore*, 571 U.S. 277, 289–90 (2014); *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 870 (5th Cir. 2001). Only when a non-resident defendant intends to cause serious harm in a forum will that be sufficient. *See Guirdy v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 628 (5th Cir. 1999) (citing *Calder*, 465 U.S. at 790). Although, Plaintiff maintains and alleges that McCullough was knew or was aware of the Unitex Defendants' and Click Mart Defendants' actions, knowledge or awareness is not enough. *See Walden*, 571 U.S. at 289–90; *Panda Brandywine Corp.*, 253 F.3d at 870.

McCullough must have committed intentional acts to cause serious harm to Plaintiff in Texas, and those allegations are absent from Plaintiff's complaint. *See Guirdy*, 188 F.3d at 628 (citing *Calder*, 465 U.S. at 790). Plaintiff failed to allege any intentional acts by McCullough. Plaintiff merely alleges that an individual from Kansas and an individual from Florida, while in Texas, made material misrepresentations about and fraudulently sold a Texas company's property to a company in New Mexico, operated by New Mexico residents. Then proceeds from that fraudulent sale were sent from New Mexico to McCullough, a Florida resident. McCullough was not present during the alleged fraudulent sale and did not make any fraudulent representations.

Any possible jurisdictional facts against McCullough in this case "rest[] on nothing but 'the mere fortuity that the plaintiff happens to be a resident of the forum,'" that his alleged business

partner or friend sent him funds from the alleged fraudulent sale, and that he was aware events took place in Texas. *See Patterson*, 764 F.2d at 1147 (quoting *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 496 (5th Cir. 1974)). There is no allegation that McCullough, himself, directed any activity to the state of Texas or that he committed "some act by which [he] purposefully avail[ed] himself of the privilege of conducting activities with [Texas], thus invoking the benefits and protections on [Texas's] laws." *See Clemens v. McNamee*, 615 F.3d 374, 379 (5th Cir. 2010). Thus, any connection that McCullough, himself, has to Texas is "random, fortuitous, or attenuated," which fails to meet the minimum contacts analysis. *See Burger King Corp.*, 471 U.S. at 475.[6]

## II. Whether the Exercise of Personal Jurisdiction is Fair and Reasonable

Plaintiff has not successfully established that McCullough had minimum contacts with Texas giving rise to the causes of action asserted against him. The Court therefore will not shift the burden to McCullough to defeat jurisdiction by showing that its exercise would be unfair or unreasonable. *See Seiferth*, 472 F.3d at 271 (citations omitted); *Stephenson*, , 2018 WL 6038359, at *3.

---

[6] Plaintiff additionally asks for jurisdictional discovery to clarify McCullough's: (1) "knowledge of the ownership of the properties at issue"; (2) "knowledge of [the Unitex Defendants'] intended and actual lease and sale of the properties at issue"; (3) "relationship with [the Unitex Defendants] as to the lease and sale and payment of the properties at issue"; (4) "relationship with Al Group"; (5) knowledge of Al Group's relationship with [the Click Mart Defendants]"; (6) "relationship with Jonesville Associates Inc."; (7) knowledge of Al Group's relationship with [the Click Mart Defendants]; (8) "knowledge of the source of the funds received through wire transfers for Al Group"; and (9) "knowledge of the source of the funds received through wire transfers from Jonesville Associates Inc.". (Dkt. #24 at p. 9). However, the answer to these questions will not cure any of the jurisdictional deficiencies identified by the Court. As such, the Court finds jurisdictional discovery unnecessary in this case.

## CONCLUSION

It is therefore **ORDERED** Michael R. McCullough's Rule 12(b)(2) and 12(b)(3) Motion to Dismiss (Dkt. #20) is hereby **GRANTED** and Plaintiff's claims against Michael R. McCullough are hereby **DISMISSED WITHOUT PREJUDICE**.

**SIGNED this 11th day of February, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE