# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| UNITED MY FUNDS, LLC, | § |
|     *Plaintiff/ Counter-Defendant*, | § |
| | §   Civil Action No. 4:19-CV-00373 |
| v. | §   Judge Mazzant |
| | § |
| CHANDANA PERERA, | § |
| HISHAM MUBAIDIN, | § |
| MICHAEL R. MCCULLOUGH, | § |
| CLICK MART, INC., | § |
| YASER AL-SHAYEF, AND | § |
| WAIL AL-SHAYEF, | § |
|     *Defendants*. | § |
| | § |
| HISHAM MUBAIDIN | § |
|     *Defendant/ Counter-Plaintiff*. | § |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Hisham Mubaidin's Motion to Compel (Dkt. #42). Having considered the motion and the relevant pleadings, the Court finds that Mubaidin's Motion is **DENIED**.

## BACKGROUND

This case arises from a dispute regarding a lease of three convenience stores located in New Mexico ("the New Mexico Properties" or "the Properties") allegedly owned by Plaintiff United My Funds, LLC ("United My Funds") (Dkt. #1). The story goes that James Yoo, president and owner of United My Funds, formed another business called Unitex Fuel, LLC ("Unitex"), a Texas company, in February 2017. Yoo formed the company with Defendants Chandana Perera, a Kansas resident, and Hisham Mubaidin ("Mubaidin"), a Florida resident (collectively "the Unitex Defendants"). Unitex was in the business of supplying fuel to gas stations and convenience stores.

The relationship between Yoo and the Unitex Defendants began to break down when the Unitex Defendants approached Defendants Yaser Al-Shayef ("Y. Al-Shayef"), and Wail Al-Shayef ("W. Al-Shayef"). Y. Al-Sahyef, a New Mexico resident, was the president of Defendant Click Mart, Inc., ("Click Mart"). W. Al-Shayef, a New Mexico resident, was intimately involved in the business operations with Click Mart. The Unitex Defendants met with the Click Mart Defendants[1] in Dallas, Texas to discuss a possible lease, with an option to purchase, the New Mexico Properties without Plaintiff's knowledge or consent. The Unitex Defendants made representations that the New Mexico Properties were owned by Unitex, that they had the right to lease and sell the Properties, and that Yoo was merely an investor in Unitex. Either during that meeting or sometime thereafter, these discussions resulted in an agreement for Unitex to lease the New Mexico Properties to Click Mart with the option to purchase the Properties ("the Lease Agreement"). The Lease Agreement also contained provisions about personal property, namely inventory. Plaintiff asserts that "[n]either [] Perera, [] Mubaidin, nor Unitex [] has any interest in the" New Mexico Properties and that the Lease Agreement ran contrary to Plaintiff's ownership interest in the Properties. (Dkt. #8 ¶ 22).

After entering into the Lease Agreement, W. Al-Shayef issued two checks in the amount of $52,244.00 and $25.000.00 to Unitex, on behalf of Click Mart, pursuant to the Lease Agreement. It is also alleged that there were two additional wire transfers of $25,000.00 and $20,000.00 to Defendant and Movant Michael R. McCullough, on behalf of Click Mart, pursuant to the Lease Agreement. McCullough is alleged to be a business partner or friend of the Unitex Defendants. The wire transfers are alleged to be made by Jonesville Associates Inc. and Al Group, Inc., which are both run by "a business partner, family, or friend of W. Al-Shayef" (Dkt. #8 ¶ 25–26).

---

[1] The Court refers to A. Al-Shayef, W. Al-Shayef, and Click Mart collectively as the Click Mart Defendants.

Based on these allegations, Plaintiff filed suit against the Unitex Defendants, the Click Mart Defendants, and McCullough (collectively "Defendants") in the District Court for Collin County, Texas on April 22, 2019 (Dkt. #2 at p. 1). Plaintiff asserted that Defendants were "involve[d] [in] an elaborate scheme" to defraud Plaintiff of its rights to be the owner of real property and personal property. (Dkt. #2 at p. 1). Defendants removed the case based on diversity of citizenship to the Eastern District of Texas[2] (Dkt. #1). After the Court issued its order and advisory, Plaintiff filed an amended complaint on June 10, 2019 (Dkt. #8).

On May 22, 2019, the Court issued the Order Governing Proceedings (Dkt. #7). In the Order, the Court instructed the parties to produce "[a] copy of all documents, electronically stored information, witness statements, and tangible things in the possession, custody, or control of the disclosing party that are relevant to the claim or defense of any party" (Dkt. #7). Such production was to be accomplished not later than 10 days after the deadline for the Rule 26(f) conference (Dkt. #7). The Order, pursuant to Local Rule CV-26(d), defined "relevant" as including:

> (1) information that would not support the disclosing parties' contentions; (2) those persons who, if their potential testimony were known, might reasonably be expected to be deposed or called as a witness by any of the parties; (3) information that is likely to have an influence on or affect the outcome of a claim or defense; (4) information that deserves to be considered in the preparation, evaluation, or trial of a claim or defense; and (5) information that reasonable and competent counsel would consider reasonably necessary to prepare, evaluate, or try a claim or defense

(Local Rule CV-26(d)). The Court then entered its Scheduling Order (Dkt. #18) on July 11, 2019. In the Scheduling Order, the Court stated:

> If the parties are unable to resolve the dispute without court intervention, the parties must then call the Court's chambers to schedule a telephone conference regarding the subject matter of the dispute prior to filing any motion to compel. After reviewing the dispute, the

---

[2] Plaintiff initially listed Defendant Chandana Perera as a resident of Frisco, Texas. However, in their notice of removal, Defendants corrected this information, identifying that Perera's residency was in Kansas thereby creating complete diversity.

3

Court will resolve the dispute, order the parties to file an appropriate motion, or direct the parties to call the discovery hotline

(Dkt. #18).

Following the issuance of the Court's Preliminary Scheduling Order, Mubaidin served United My Funds with 25 Requests for Production (Dkt. #42). Among the requests were "8 requests for production related to information belonging to Unitex" (Dkt. #42). Mubaidin's Requests for Production were served on United My Funds on September 20, 2019. On October 30, 2019, United My Funds served its Responses ("Original Responses") to Mubaidin's Requests. United My Funds objected to every request asserting a variety of objections including, among other things, relevance, scope, and burden objections. Due to these objections, the parties complied with the Court's Preliminary Scheduling Order and sought a telephone conference with the Court. The telephone conference occurred on November 14, 2019. At the conference, the Court authorized Mubaidin to file a motion to compel. Mubaidin took up the Court's offer and has now filed his Motion to Compel (Dkt. #42). Mubaidin's Motion to Compel concerns the following Requests and Responses:

> Request for Production No. 9. All company agreements, certificates of formation, and other corporate documents associated with Unitex Fuel.
>
>> Response: Plaintiff objects to this request to the extent it seeks documents and information in the possession of a non-party to this lawsuit. Plaintiff objects to this request as irrelevant and not proportional to the needs of the case. Plaintiff objects to this request to the extent it seeks information already in Defendant's possession. Plaintiff objects to this request to the extent it seeks trade secret and/or confidential information.
>
> Request for Production No. 11. All communications between any owner or representative of Unitex and any owner, employee, or representative of Click Mart.
>
>> Response: Plaintiff objects to this request to the extent it seeks documents and information in the possession of a non-party to this lawsuit. Plaintiff objects to this request to the extent it seeks information already in Defendant's possession. Plaintiff objects to this request as irrelevant and not proportional to the needs of the case. Plaintiff objects to this request to the extent it seeks documents and communications concerning attorney-client communications, attorney-work

4

product, and/or documents prepared in anticipation of litigation. Plaintiff objects to this request to the extent it seeks trade secret and/or confidential information.

Request for Production No. 13. All documents evidencing the assets and liabilities of Unitex Fuel.

> Response: Plaintiff objects to this request to the extent it seeks documents and information in the possession of a non-party to this lawsuit. Plaintiff objects to this request as irrelevant and not proportional to the needs of the case. Plaintiff objects to this request as overbroad, vague, ambiguous and unduly burdensome. Plaintiff objects to this request to the extent it seeks information already in Defendant's possession. Plaintiff objects to this request to the extent it seeks trade secret and/or confidential information.

Request for Production No. 14. All documents and communications related to transfers of money or assets from Unitex Fuel to Yoo, United My Funds, or any other entity of which Yoo is a member or owner.

> Response: Plaintiff objects to this request as irrelevant and not proportional to the needs of the case as the information sought is unrelated to any claims or defenses at issue as of the date of service of Defendant's discovery request. Plaintiff objects to this request to the extent it seeks information already in Defendant's possession. Plaintiff objects to this request to the extent it seeks documents and information in the possession of a non-party to this lawsuit. Plaintiff objects to this request to the extent it seeks trade secret and/or confidential information. Without waiving said objections, after a diligent search, Plaintiff has located no documents responsive to this request.

Request for Production No. 15. All bank statements for any accounts held in the name of United Fuel from February 2017 to present.

> Response: Plaintiff objects to this request to the extent it seeks documents and information in the possession of a non-party to this lawsuit. Plaintiff objects to this request as irrelevant and not proportional to the needs of the case. Plaintiff objects to this request to the extent it seeks information already in Defendant's possession. Plaintiff objects to this request to the extent it seeks trade secret and/or confidential information.

Request for Production No. 16. All of Unitex Fuel's accounting records from February 2017 to present, including but not limited to Unitex Fuel's monthly, quarterly, and yearly general ledgers, transaction by detail statements, balance sheets, profit and loss statements, and electronic records kept on accounting software programs.

> Response: Plaintiff objects to this request to the extent it seeks documents and information in the possession of a non-party to this lawsuit. Plaintiff objects to this request as irrelevant and not proportional to the needs of the case. Plaintiff objects to this request to the extent it seeks information already in Defendant's possession. Plaintiff objects to this request to the extent it seeks trade secret and/or confidential information.

Request for Production No. 17. All tax returns for Unitex Fuel from February 2017 to present.

> Response: Plaintiff objects to this request to the extent it seeks documents and information in the possession of a non-party to this lawsuit. Plaintiff objects to this request as irrelevant and not proportional to the needs of the case. Plaintiff objects to this request to the extent it seeks information already in Defendant's possession. Plaintiff objects to this request to the extent it seeks trade secret and/or confidential information.

Request for Production No. 21. All documents reflecting payments made by Unitex Fuel to Sunoco LP, or alternatively, payments received by Sunoco LP from Unitex Fuel from April 2018 to the present.

> Response: Plaintiff objects to this request to the extent it seeks documents and information in the possession of a non-party to this lawsuit. Plaintiff objects to this request as irrelevant and not proportional to the needs of the case. Plaintiff objects to this request to the extent it seeks documents and information not in the possession of Plaintiff. Plaintiff objects to this request to the extent it seeks information already in Defendant's possession. Plaintiff objects to this request to the extent it seeks trade secret and/or confidential information.

(Dkt. #42, Exhibits A & B). On January 27, 2020, United My Funds filed Defendant United My Funds, LLC's Response in Opposition to Plaintiff Hisham Mubaidin's Motion to Compel (Dkt. #44). Notably, following the telephone conference, on December 12, 2019 and December 24, 2019, United My Funds filed Amended Responses seeking to clarify each of its objections. United My Funds Response to Mubaidin's Motion to Compel is largely grounded in its Amended Response to Mubaidin's Requests for Production. Finally, on February 4, 2020, Mubaidin filed Hisham Mubaidin's Reply in Support of His Motion to Compel (Dk. #52). No sur-reply was filed.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any non[-]privileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1). Relevance, for the purposes of Rule 26(b)(1), is when the request is reasonably calculated to lead to the discovery of admissible evidence. FED. R. CIV. P. 26(b)(1); *Crosby v. La. Health & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). The Court's scheduling order requires

that the parties produce, as part of their initial disclosure, "documents containing, information 'relevant to the claim or defense of any party.'" (Dkt. #18 at p. 4). Moreover, the Local Rules of the Eastern District of Texas provide further guidance suggesting that information is "relevant to any party's claim or defense [if]: (1) it includes information that would not support the disclosing parties' contentions; . . . (4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense. . . ." LOCAL RULE CV-26(d). It is well established that "control of discovery is committed to the sound discretion of the trial court." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)).

Rule 37 of the Federal Rules of Civil Procedure allows a discovering party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1). The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006). Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted. *Id.*

Federal Rule of Civil Procedure 34 governs requests for production of documents, electronically stored information, and tangible things. Rule 34 requires responses to "either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B). "An objection [to the entire request] must state whether any responsive materials are being withheld on

the basis of that objection." FED. R. CIV. P. 34(b)(2)(C).  On the other hand, "[a]n objection to part of a request must specify the part and permit inspection of the rest."  FED. R. CIV. P. 34(b)(2)(C).

After responding to each request with specificity, the responding attorney must sign their request, response, or objection certifying that the response is complete and correct to the best of the attorney's knowledge and that any objection is consistent with the rules and warranted by existing law or a non-frivolous argument for changing the law.  FED. R. CIV. P. 26(g).  This rule "simply requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection." FED. R. CIV. P. 26(g) advisory committee note (1983).

The federal rules follow a proportionality standard for discovery.  FED. R. CIV. P. 26(b)(1).  Under this requirement, the burden falls on both parties and the court to consider the proportionality of all discovery in resolving discovery disputes.  FED. R. CIV. P. 26(b)(1), advisory committee note (2015).  This rule relies on the fact that each party has a unique understanding of the proportionality to bear on the particular issue.  *Id.*  For example, a party requesting discovery may have little information about the burden or expense of responding.  *Id.*  "The party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination."  *Id.*

**ANALYSIS**

The Court is presented with three issues concerning: (1) whether United My Funds' Amended Responses are timely; (2) whether United My Funds' objections are sufficient; and (3) whether Mubaidin has carried his burden such that the Court should compel United My Funds to produce non-party documents.  The Court addresses each matter in turn.

I.  United My Funds' Amended Responses Are Not Timely

United My Funds contends that any issues with its purportedly boilerplate Responses to Mubaidin's Requests for Production have been resolved by its recently Amended Responses. What is more, United My Funds maintains that its Amended Responses are not only judicially sanctioned, but that they were ordered by the Court and thus cannot be untimely. United My Funds' argument is disingenuous at best.

After Mubaidin's counsel argued that "all of the objections are boilerplate" at the November 14 telephone conference, the Court responded:

> THE COURT: Okay. So let me just say generally, the Court has written several opinions dealing with kind of boilerplate objections, and the Court usually just denies those universally. The rules do not allow you to file boilerplate objections, so those objections are always overruled or waived because they're not appropriate under the Federal Rules anymore.

(Dkt. #52, Exhibit 1). The Court then granted Mubaidin leave to file a motion to compel (Dkt. #52, Exhibit 1). The Court, as corroborated by the transcript, never granted United My Funds leave to file an Amended Response. While United My Funds has an ongoing obligation to supplement its prior responses, *see* FED. R. CIV. P. 26(e), United My Funds cannot now argue that its Amended Responses are timely such that they replace its Original Responses. To be sure, United My Funds is not attempting to supplement its Original Responses with new information as Rule 26 permits; rather, it is simply attempting to avoid the conclusion that its Original Responses are merely boilerplate copying and pasting. Because United My Funds did not have leave to file its Amended Responses such that they would be timely, and because said Amended Responses were filed over thirty days after Mubaidin's Requests for Production were served, the Court finds United My Funds' Amended Responses untimely. *See* FED. R. CIV. P. 34(b)(2)(A) ("The party to whom the request is directed must respond in writing within 30 days after being served or – if the request was delivered under Rule 26(d)(2) – within 30 days after the parties' first Rule 26(f) conference.

9

A shorter or longer time may be stipulated to under Rule 29 or be ordered by the Court."). Consequently, the Court will only consider United My Funds' Original Responses.

> II. United My Funds' Objections to Mubaidin's Requests for Production are Insufficient

In order to satisfy its burden, a party objecting to discovery "must make a specific, detailed showing of how a request is burdensome [or overbroad]." *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) (citing *Alexander v. FBI*, 192 F.R.D. 50, 53 (D.D.C. 2000)). To that end, "[a] mere statement by a party that a request is 'overly broad and unduly burdensome' is not adequate to voice a successful objection." *Id.* (citing *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511–12 (N.D. La. 2000)). Summary objections are rejected because "[b]road-based, non-specific objections are almost impossible to assess on their merits, and fall woefully short of the burden that must be borne by a party making an objection to an interrogatory or document request." *Id.* (citing *Harding v. Dana Transp. Inc.*, 914 F. Supp. 1084, 1102 (D.N.J. 1996)). Thus, "[a] party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request." *Id.* (citing *Waddell & Reed Fin., Inc. v. Torchmark Corp.*, 222 F.R.D. 450, 454 (D. Kan. 2004); *see also McLoed, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485–86 (5th Cir. 1990) (holding that the use of "Rambo tactics"—i.e., merely objecting that a request is "overly broad, burdensome, oppressive and irrelevant," without showing "specifically how each [request] is not relevant or how each question is overly broad, burdensome or oppressive"—is inadequate to "voice a successful objection.").

A party may also "properly raise and preserve an objection to production of documents in response to a specific document request or interrogatory by objecting 'to the extent' that the requests seeks privileged materials or work product, so long as the responding party also provides

the information required by Rule 26(b)(5)(A)." *Nerium Skincare, Inc. v. Olson*, 2017 WL 277634, at *1 (N.D. Tex. Jan. 20, 2017) (citing *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014)). "The party asserting the attorney-client privilege bears the burden of showing how each document satisfies the elements of the privilege." *United States v. Davita, Inc.*, 2011 WL 13077087, at *1 (E.D. Tex. Nov. 28, 2011) (citing *Ferko v. Nat'l Assoc. for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 134 (E.D. Tex. 2003) (citing *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985))). "Likewise, the party asserting work-product protection bears the burden of proving that discovery materials warrant such protection." *Id.* (citing *Ferko*, 218 F.R.D. at 136).

The purpose of these requirements is to instill civility in attorneys, efficiency in the judiciary, and justice in the discovery process. Indeed, as the Fifth Circuit stated in *Quarles*:

> In a recent case we observed, "Regardless of [plaintiff's] intentions, or inattention, which led to the flouting of discovery deadlines, ["Rambo tactics"] are a particularly abhorrent feature of today's trial practice. They increase the cost of litigation, to the detriment of the parties enmeshed in it; they are one factor causing disrespect for lawyers and the judicial process; and they fuel the increasing resort to means of non-judicial dispute resolution . . . ." *Geiserman v. MacDonald,* 893 F.2d 787, 792 (5th Cir.1990) (footnote omitted).
>
> The same condemnation of abusive discovery tactics should apply here. Counsel have an obligation, as officers of the court, to assist in the discovery process by making diligent, good-faith responses to legitimate discovery requests.

*Id.* at 1486. Once a party objecting to discovery provides a proper objection, the party seeking to compel particular information must then "address each objection raised by Defendants and show why each discovery request is relevant to his claims." *Johnson v. Tune*, 2011 WL 13196545, at *1 (E.D. Tex. Jan. 25, 2011) (Bush, M.J.).

United My Funds' objections to Mubaidin's Requests for Production are nothing short of the "Rambo tactic" boilerplate legalese that the Fifth Circuit discussed in *Quarles*. *Quarles*, 894 F.2d 1482, 1485–87. The majority of United My Funds' objections are merely grounded in vague

objections that a request is overbroad, unduly burdensome, irrelevant, confidential, belonging to a non-party, or the like. No privilege log accompanied United My Funds' objections. Further, none of the objections contain any specificity as to why the objections are warranted. The Court accordingly rejects each of United My Funds' objections as inadequate. *Brady*, 238 F.R.D. at 437. With that being said, the Court recognizes that objections as to privilege should not be easily waived. Thus, the Court orders United My Funds' to provide Mubaidin with a privilege log that explicitly lists, in conforming with the Federal Rules, "the nature of the documents, communications, or tangible things not produced or disclosed." FED. R. CIV. PRO. 26(b)(5)(A).

While none of United My Funds' objections are adequate and are consequently waived, one final issue remains that the Court must address irrespective of United My Funds' waiver: namely, whether the information sought by Mubaidin may be obtained through Requests for Production.

  III.  **Mubaidin Has Not Carried His Burden to Warrant the Court Compelling United My Funds to Produce Non-Party Documents**

Mubaidin has requested that United My Funds provide Mubaidin with the following:

  i. All company agreements, certificates of formation, and other corporate documents associated with Unitex Fuel.
  ii. All communications between any owner or representative of Unitex and any owner, employee, or representative of Click Mart.
  iii. All documents evidencing the assets and liabilities of Unitex Fuel.
  iv. All documents and communications related to transfers of money or assets from Unitex Fuel to Yoo, United My Funds, or any other entity of which Yoo is a member or owner.
  v. All bank statements for any accounts held in the name of United Fuel from February 2017 to present.
  vi. All of Unitex Fuel's accounting records from February 2017 to present, including but not limited to Unitex Fuel's monthly, quarterly, and yearly general ledgers, transaction by detail statements, balance sheets, profit and loss statements, and electronic records kept on accounting software programs.
  vii. All tax returns for Unitex Fuel from February 2017 to present.

> viii. All documents reflecting payments made by Unitex Fuel to Sunoco LP, or alternatively, payments received by Sunoco LP from Unitex Fuel from April 2018 to the present.

(Dkt. #42, Exhibit A). As evidenced by these requests, Mubaidin is intent on receiving information relating to a non-party: Unitex. Mubaidin argues, among other things, that because his conduct relating to Unitex is the basis of this suit, he should be allowed access to documents that might serve as his defense. Mubaidin further contends that the requested documents are in the control or possession of United My Funds because: (1) James Yoo, president and sole member of United My Funds, is a fifty percent owner of Unitex;[3] and (2) United My Funds and Unitex share the same address as evidenced by Unitex' Certificate of Formation and United My Funds Certificate of Amendment. Mubaidin also speculates that "[i]t is possible, even, that the Unitex documents are stored on the exact same computer as the documents previously produced by UMF" (Dkt. #42). Thus, Mubaidin claims that United My Funds has the practical ability to access and produce these documents under Rule 34. In response, United My Funds has argued that it does not have practical access to said documents, Mubaidin has not met his burden, and Mubaidin's "evidence" is mere speculation. Notably, United My Funds' objections have been waived as discussed in Part II, *supra*.[4] Nonetheless, because this issue concerns discovery of a non-party's records, the Court must independently determine whether Mubaidin may request that United My Funds provide non-party documents. The Court finds that Mubaidin has not carried his burden in establishing that United My Funds has control over the Unitex documents; therefore, the Court will not compel United My Funds to produce these non-party documents.

Pursuant to Federal Rule of Civil Procedure 34(a):

> A party may serve on any other party a request within the scope of Rule 26(b):

---

[3] Mubaidin owns twenty-five percent of Unitex.
[4] And even if United My Funds' relevance defenses had not been waived, the Court would find that the Unitex documents are relevant.

(1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:

(A) any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or

(B) any designated tangible things; or

(2) to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

FED. R. CIV. P. 34(a). The inquiry, then, under Rule 34(a), is whether the responding party has "control" over the records sought. *See Mir v. L-3 Commc'n. Integrated Sys., L.P.*, 319 F.R.D. 220, 230 (N.D. Tex. 2016). "Rule 34 is broadly construed and documents within a party's control are subject to discovery, even if owned by a nonparty." *Id.* (citing *S. Filter Media, LLC v. Halter*, 2014 WL 4278788, at *5 (M.D. La. Aug. 29, 2014)). "Rule 34's definition of 'possession, custody, or control,' includes more than actual possession or control of the materials; it also contemplates a party's legal right or practical ability to obtain the materials from a nonparty to the action." *Id.* (citing *Edwards v. City of Bossier City*, 2016 WL 3951216, at *3 (W.D. La. July 20, 2016)). "The burden, however, is on the party seeking discovery to make a showing that the other party has control over the documents sought." *Id.* (citing *S. Filter*, 2014 WL 4278788, at *5; *accord Shell Glob.*, 2011 WL 3418396, at *2 ("The party seeking production of documents bears the burden of establishing the opposing party's control over those documents."); *Goh v. Baldor Elec. Co.*, No. 3:98-mc-64-T, 1999 WL 20943, at *2 (N.D. Tex. Jan. 13, 1999) (same)).

> Typically, what must be shown to establish control over documents in the possession of a non-party is that there is "a relationship, either because of some affiliation, employment or statute, such that a party is able to command release of certain documents by the non-party person or entity in actual possession." *Id.*; *see also Shell Global Solutions (US) Inc. v. RMS Eng'g, Inc.*, 2011 WL 3418396, at *2 (S.D. Tex. 2011) ("Among the factors used by courts to determine whether one corporation may be deemed under control of another corporation are: (a) commonality of ownership, (b) exchange or intermingling of directors,

14

> officers or employees of the two corporations, (c) exchange of documents between the corporations in the ordinary course of business, (d) any benefit or involvement of the nonparty corporation in the transaction, and (e) involvement of the non-party corporation in the litigation."). Courts have ordered corporate parties to produce documents in the possession of corporate relatives—such as parent, sibling, or subsidiary corporations. *See Steel Software Sys. Corp. v. DataQuick Info. Sys., Inc.*, 237 F.R.D. 561, 564 (D. Md. 2006).

*Diamond Consortium, Inc. v. Manookian*, 2017 WL 3301527, at *9 (E.D. Tex. Aug. 3, 2017).

While requesting non-party documents from a party is permitted in certain circumstances, those circumstances are not present here. Mubaidin has only established that United My Funds and Unitex share a common owner, Yoo, and a common address. Mubaidin has provided no evidence demonstrating an exchange of documents between the entities, any benefits shared between the two, any relationship between the parties in this litigation outside of common membership, or that the entities are corporate relatives. *See Manookian*, 2017 WL 3301527, at *9. Rather, Mubaidin has provided the Court with speculation that the documents may be stored on the same computer that houses the documents owned by United My Funds. Speculation, however, will not help Mubaidin carry his burden. *See Mir*, 319 F.R.D. at 230. Further, Mubaidin's reliance on *Hoffman v. L&M Arts*, 2013 WL 12284632, at *3 (N.D. Tex. Oct. 2, 2013) is misplaced.

In *Hoffman*, the Northern District compelled L&M to produce documents relating to non-parties DLFA NY and DLFA Geneva. *Id.* at *3. Finding that: (1) the sought after documents were within L&M's control; (2) "[o]ne of L&M's former principals, Lévy, co-owns DLFA Geneva with her mother and functions as DLFA Geneva's manager"; (3) L&M had partially acquiesced to production; (4) the entities did not keep their documents entirely separate; (5) DLFA Geneva played a large role in the disputed conduct; and (6) L&M had not carried its burden in objecting to further production, the Court found production warranted. *Id.* While *Hoffman* may have been persuasive for Mubaidin had the facts here been more analogous, *Hoffman* further compels the Court's conclusion given the discrepancies between the cases. As the Court stated above,

Mubaidin has only demonstrated common ownership and a common address. Unlike *Hoffman*: (1) United My Funds has not acquiesced, even partially, to production; (2) Mubaidin has not established any exchange of documents between the entities; (3) Mubaidin has not established that the entities store said documents in a similar location; and (4) Mubaidin has not alleged that Unitex played a role similar to that of DLFA Geneva. Moreover, United My Funds has stated, on the record, that it is not in possession of said documents. *See* Dkt. #52, Exhibit A ("Not of United My Funds, Your Honor. He's asking for tax returns, corporate documents. He's asking for their accounting documents. Those are not in possession of United My Funds, Your Honor."). Mubaidin must demonstrate that United My Funds is practically able to obtain the materials he seeks. Put simply, Mubaidin, armed with only two favorable facts and some speculation, has not carried his burden. *See Manookian*, 2017 WL 3301527, at *9.

While Mubaidin has not carried his burden as to his Requests for Production, the Court is not foreclosing Mubaidin's ability to receive the Unitex documents through a more appropriate discovery device. Indeed, a subpoena directed to Unitex may very well rectify this matter. But because Mubaidin failed to carry his burden as to his Requests for Production, the Court must deny the present Motion to Compel.

## CONCLUSION

It is therefore **ORDERED** that Hisham Mubaidin's Motion to Compel (Dkt. #42) is hereby **DENIED**.

**SIGNED this 12th day of March, 2020.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE